UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STILLAGUAMISH TRIBE OF INDIANS, a federally-recognized Indian tribe,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF WASHINGTON, ROBERT FERGUSON, in his official capacity as Attorney General of Washington,<br><br>Defendants. | CASE NO. 16-5566 RJB<br><br>ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS AND DEFENDANTS' F.R.C.P. 56(D) MOTION |

This matter comes before the Court on Plaintiff Stillaguamish Tribe of Indians' ("Tribe") Motion for Summary Judgment (Dkt. 9), Plaintiff Stillaguamish Tribe of Indians' Motion to Dismiss Defendants' Counterclaims (Dkt. 14) and the State of Washington and it's Attorney General, Robert Ferguson's (collectively "State") motion under Fed. R. Civ. P. 56(d) (Dkt. 15). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

ORDER - 1

This case arises from an April 6, 2005 Salmon Project Funding Agreement ("Agreement") that was signed by a State official and a Tribal employee, Patrick Stevenson, who the Tribe asserts was not authorized to sign the Agreement or to waive the Tribe's sovereign immunity. The Agreement provided that the State would give the Tribe a grant of $497,000 for the Tribe (or its contractor) to build a revetment to "eliminate direct sediment discharge" into the North Fork of the Stillaguamish River from the Steelhead Haven landslide and so "improve instream morphology and habitat in salmon bearing streams." Dkt. 11-1. The revetment was constructed about a year later.

On March 22, 2014, near Oso, Washington, a portion of an unstable hill collapsed, sending mud and debris across the North Fork of the Stillaguamish River. The Oso landslide killed 43 people and destroyed the Steelhead Haven neighborhood. The victims of the landslide filed cases (now consolidated) against the State, Grandy Lake LLC, and Snohomish County in King County Superior Court, alleging, in part, that the State is liable because the revetment constructed by the Tribe was a cause of some of their injuries. *Pszonka, et al., v. Snohomish County, et al.,* 14-2-18401-8 SEA. The State, seeking indemnity under the Agreement, sought to involve the Tribe.

In this case, the Tribe seeks declaratory relief finding that the Tribe did not authorize the signing of the Agreement or a waiver of its sovereign immunity, the Agreement is accordingly invalid, and all its provisions are unenforceable against the Tribe. Dkt. 1. The Tribe seeks injunctive relief enjoining any effort by the State "to enforce the Agreement against the Tribe or to compel the Tribe to participate in *Pszonka* dispute resolution." *Id.* The State has counterclaimed for: (1) breach of contract for the Tribe's refusal to honor the indemnity clauses of the Agreement, (2) declaratory relief regarding the scope of the indemnity agreement, (3)

declaratory relief that the Tribe has waived its sovereign immunity, and (4) recoupment in the amount of the grant, if the Tribe is deemed not to have waived sovereign immunity. Dkt. 8.

## I.   RELEVANT FACTS AND PENDING MOTIONS

### A. THE TRIBE, ITS CONSTITUTION, AND GOVERNING BODY

The Tribe gained federal acknowledgment in 1976. Dkt. 10, at 1. It adopted a Constitution in June of 1986. *Id*. According to the Tribe's Constitution, the Tribe is governed by a six-member Board of Directors. Dkt. 10-1, at 2 (Art. IV). Article VII of the Tribe's Constitution, "Powers and Duties of the Board of Directors," provides:

> The powers and duties set forth in this Article shall be exercised by the Board of Directors to the fullest extent permitted by Federal Law as restricted by Article VIII of this Constitution. All the powers and legal authority, express, implied, or inherent, which are vested or acknowledged by existing Federal Law in the Stillaguamish Tribe as a sovereign political entity, shall include, but not be limited to, the following:
>
> (a) To enact a comprehensive law and order code which shall be implemented by the tribal court system. . .
>
> (b) To administer the affairs and assets of the tribe including tribal lands, funds, minerals, timber, water rights, fishing rights, and other resources under appropriate contracts, leases, permits, loans, or sale agreements.
>
> (c) To prevent the sale, disposition, lease, or encumbrance of tribal land, interest in lands, or other tribal assets. . .
>
> (f) To negotiate with and represent the tribe before Federal, State, tribal, and local governments and their departments and agencies, and to advise and consult with representatives of the Department of the Interior of all activities of the Department that may affect the Stillaguamish Tribe.
>
> (g) To appoint necessary committees.
>
> (h) To have and exercise such other powers and authority necessary to fulfill its obligations, responsibilities, objectives, and purposes as the governing body of the tribe, except as limited by other provisions of this Constitution. . .

ORDER ORDER ON PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND MOTION TO
DISMISS AND DEFENDANTS' F.R.C.P. 56(D)
MOTION- 3

Dkt. 10-1, at 5 (Art.VII, § 1).  Further, the Board of Directors can "appoint such other officials as committees as are considered necessary."  Dkt. 10-1, at 2 (Art. IV).

The head of the Board of Directors is the Chairman, who presides over Tribe and Board of Directors' meetings and is vested with "any authority delegated to him/her by the Board of Directors."  Dkt. 10-1, at 8 (Art. XII § 1).  The Chairman during the relevant period was Shawn Yanity.  Dkt. 10.  Mr. Yanity is again serving as the Chairman.  *Id*.

On October 26, 2010, the Board of Directors passed the Stillaguamish Tribe of Indians Board of Directors Resolution 2010/142.  Dkt. 10-2.  According to Chairman Yanity, this Resolution "reaffirmed the Tribe's longstanding policy that limited waivers of the Tribe's sovereign immunity, whether in contracts, agreements or any other instruments, are only granted by the Board in writing and must be memorialized in the official records of the Board of Directors."  Dkt. 10, at 3.

**B. THE 2005 AGREEMENT,  MARCH 2014 OSO LANDSLIDE, & LITIGATION**

On April 6, 2005, Patrick Stevenson, the Environmental Manager for the Tribe, signed the Agreement at issue here.  Dkt. 11.  (Mr. Stevenson is not a member of the Tribe and has never served on the Board of Directors.  *Id.*)  The Agreement was intended to enhance salmon habitat by reducing the sedimentation on the North Fork of the Stillaguamish River resulting from a major landslide.  Dkt. 11-1.  The goal of the project was to build a large wood "revetment 500' from the toe of the slide, move the river south of the revetment, and isolate the landslide from the river, eliminating the direct sediment discharge."  Dkt. 11-1, at 3.  In accord with the Agreement, the State provided the Tribe a $497,000 grant.  Dkt. 11.  The construction of the revetment (sometimes referred to in the record as a cribwall) was completed in October 2006.  Dkt. 11, at 2.  Repairs have been made as needed.  *Id.*

ORDER ORDER ON PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND MOTION TO
DISMISS AND DEFENDANTS' F.R.C.P. 56(D)
MOTION- 4

After the tragic March 2014 Oso Landslide, and subsequent lawsuits by the victims against the State, the State notified the Tribe on August 26, 2015 of its belief that the victims' "claims arising from the [revetment] project are covered by the defense, indemnity and hold harmless clause of the Agreement." Dkt. 13-1, at 1. (The State acknowledged that the *Pszonka* Plaintiffs asserted several grounds for State liability and that only some were related to the revetment project with the Tribe.) *Id.*

This 2005 Agreement between the parties, in which the Tribe is referred to as the Sponsor, contained an indemnification clause that provided:

> To the fullest extent permitted by the law, the Sponsor expressly agrees to and shall indemnify, defend and hold harmless the State and its agencies, officials, agents and employees from and against all claims, actions, costs, damages, or expenses of any nature arising out of or incident to the Sponsor's or any Contractor's performance or failure to perform the Agreement. Sponsor's obligation to indemnify, defend and hold harmless also includes any claim by Sponsor's agents, employees, representatives or any Contractor or its employees. Sponsor's obligation to defend includes payment of any costs or attorneys' fees. Sponsor's obligation shall not include such claims that may be caused by the sole negligence of the State and its agencies, officials, agents, and employees. If the claims or damages are caused by or result from the concurrent negligence of (a) the State, its agents or employees and (b) the Sponsor, its Contractors; agents, or employees, this indemnity provision shall be valid and enforceable only to the extent of the negligence of the Sponsor or its Contractors, agents, or employees. The Sponsor expressly agrees to waive his/her immunity under Title 51 RCW to the extent required to indemnify, defend, and hold harmless the State and its agencies, officials, agents or employees.

Dkt. 11-1, at 10. On September 30, 2015, the State wrote the Tribe again, this time attempting to invoke an informal resolutions portion of the Agreement, and barring success with that procedure, notified the Tribe that it will turn to litigation as provided in Section 41 of the Agreement. Dkt. 13-2. Section 41 of the Agreement provides the following:

> In cases where this agreement is between the [State] and a federally recognized Indian tribe, the following Governing Law/Venue applies:
> A. The State of Washington agrees that it shall initiate any lawsuit against a federally recognized Indian tribe arising out of or relating to the performance,

ORDER ORDER ON PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND MOTION TO
DISMISS AND DEFENDANTS' F.R.C.P. 56(D)
MOTION- 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

      breach, or enforcement of this agreement in Federal Court.  Interpretation shall be according to the law of the State of Washington.  In the event that the Federal Court determines that it lacks subject matter jurisdiction, to resolve the dispute between the State and Tribal Party, then the parties agree to venue in Thurston County Superior Court, but the parties agree that the matter shall not be pursued in superior court unless there is a Federal Court determination that it lacks subject matter jurisdiction.
          B. Any judicial award, determination, order, decree, or other relief, whether in law or equity or otherwise, resulting from the action shall be binding and enforceable upon the parties.  Any money judgment or award against the Tribe, tribal officers and members, or the State of Washington and its officers and employees may not exceed the amount provided for in Section F. – Project Funding of the Agreement.
          C. The Tribe hereby waives its sovereign immunity as necessary to give effect to this section, and the State of Washington has waived its immunity to suit in state court. . .

Dkt. 11-1, at 21.  The Tribe wrote the State on October 5, 2015, informing it that the Tribe felt that Mr. Stevenson did not sign the Agreement with the Board of Director's authorization or approval, and so the Agreement is invalid.  Dkt. 13-3.  Parties continued to exchange letters, including a letter from the State requesting that the Tribe participate in mediation for the *Pszonka,* et al. lawsuit; the Tribe declined.  Dkts. 13-4, 13-5, and 13-6.

      This lawsuit was filed on June 27, 2016.  Dkt. 1.  Parties' joint status report is due on September 27, 2016.  Dkt. 4.

      C.  **PENDING MOTIONS**

      The Tribe now moves for summary judgment arguing that because the Tribal employee who signed the agreement was not authorized to either sign the agreement or waive the Tribe's sovereign immunity, the Agreement is invalid and cannot be enforced against it.  Dkt. 9.  It argues that it has not waived its sovereign immunity here and the court has affirmed the Tribe's sovereign immunity in *Stillaguamish Tribe v. Pilchuck Group, LLC,* Western District of Washington case number 10-995 RAJ, Dkt. 43 (W.D. Wash. 2011).  *Id.*  The Tribe asserts that

ORDER ORDER ON PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND MOTION TO
DISMISS AND DEFENDANTS' F.R.C.P. 56(D)
MOTION- 6

1 | the State cannot rely on equitable considerations like apparent authority, ratification, or estoppel
2 | to overcome the Tribe's sovereign immunity. *Id.*

3 |      The Tribe also filed a motion to dismiss the State's counterclaims, arguing that it did not
4 | waive its sovereign immunity in the Agreement (or by filing this case), and so the counter claims
5 | should be dismissed. Dkt. 14. It argues further that the doctrine of recoupment does not apply
6 | here. *Id.* The Tribe asserts, in addition, or in the alternative, that the State's first, second and
7 | fourth counterclaims (for (1) breach of contract for the Tribe's refusal to honor the indemnity
8 | clauses of the Agreement, (2) declaratory relief regarding the scope of the indemnity agreement,
9 | and (4) recoupment in the amount of the grant, if the Tribe is deemed not to have waived
10 | sovereign immunity) fail to state a federal question, and so the Court does not have subject
11 | matter jurisdiction over them. *Id.*

12 |      The State filed a combined response to both motions and makes a Fed. R. Civ. P. 56(d)
13 | motion. Dkt. 15. The State points out that Judge Jones in *Pilchuck* rejected the Tribe's
14 | assertions (like the ones they make here) that its Constitution and laws required written
15 | resolution of the Board to waive sovereign immunity. *Id.* The *Pilchuck* court found that the
16 | Tribe's 1986 Constitution "is silent regarding who may waive the Tribe's immunity or the
17 | procedures for doing so. Until 2010, no Board resolution or other formal document set forth
18 | policies and procedures for doing so. Until 2010, no Board resolution or other formal document
19 | set forth policies and procedure for waiving immunity. At the time . . . the Tribe had no
20 | consistent practice for authorizing people to enter contracts or waive sovereign immunity."
21 | *Pilchuck,* at 5. The State points out that the *Pilchuck* court noted that under the Tribe's
22 | Constitution, the Board of Directors can appoint lesser officials, and that "nothing in the
23 | Constitution explains what powers the Tribe can delegate." Dkt. 15, (*quoting Pilchuck*, at 5).

24 | ORDER ORDER ON PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND MOTION TO
DISMISS AND DEFENDANTS' F.R.C.P. 56(D)
MOTION- 7

1  Further, it argues that in *Pilchuck* the court noted that "[i]t is entirely possible that the Tribe's

2  Constitution permits the Tribal Board, or perhaps even the Board's Chair, to make off the record

3  appointments of agents with the authority to waive sovereign immunity." *Id.*  The State argues

4  that no discovery has taken place in this case. *Id.*  It asserts "it is 'entirely possible' that Mr.

5  Stevenson, who at all times acted in the Tribe's best economic interests, had such authority." *Id.*

6  It argues that in finding that the Tribe had not waived sovereign immunity, the *Pilchuck* court

7  relied on evidence of what actually happened - evidence the parties gathered during discovery.

8  *Id.*  The State points out that the Tribe has entered into several contracts, signed by several

9  representatives of the Tribe (including Mr. Yanity), which contain language waiving the Tribe's

10 sovereign immunity.  *Id.*  The State urges the Court to deny the Tribe's motion until it has had an

11 opportunity to conduct discovery.  *Id.*  The State then advances arguments as to why the Tribe's

12 motions should be denied, asserts the Tribe waived its immunity on its claim for recoupment,

13 and maintains that the Tribe's Complaint alleges no basis for federal jurisdiction.  *Id.*

14        The Tribe files two replies, and argues that the State has not met the requirements for a

15 Rule 56(d) motion, and argues that the Court should grant its motions.  Dkts. 18 and 19.

## II.  DISCUSSION

### A.  SUMMARY JUDGMENT STANDARD

18        Summary judgment is proper only if the pleadings, the discovery and disclosure materials

19 on file, and any affidavits show that there is no genuine issue as to any material fact and that the

20 movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is

21 entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

22 showing on an essential element of a claim in the case on which the nonmoving party has the

23 burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

24
ORDER ORDER ON PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND MOTION TO
DISMISS AND DEFENDANTS' F.R.C.P. 56(D)
MOTION- 8

of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

**B. RULE 56(d) MOTION**

Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." A party requesting relief pursuant to Rule 56(d) "must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006).

The State's Rule 56(d) motion (Dkt. 15) should be granted and the Tribe's motion for summary judgment and motion to dismiss (Dkts. 9 and 14) should be denied without prejudice, to be renoted, if appropriate, after the conclusion of discovery on the Tribe's sovereign immunity. The State has sufficiently shown specific facts that further discovery would reveal and has explained why those facts may preclude summary judgment and the motion to dismiss. *Tatum*, at 1100. (Both motions turn on the question of the Tribe's sovereign immunity and rely on documents outside the Complaint.) No discovery has been conducted in this case. In support

of its' motions, the Tribe offers the declaration of Mr. Yanity, who asserts that "[d]uring [his] time on the Tribe's Board, it has had a practice of authorizing limited waivers of the Tribe's sovereign immunity through written Board resolutions." Dkts. 9 and 14 (*citing* Dkt. 10, at 2). This contention was found by the *Pilchuck* court to be "flatly incorrect." *Pilchuck,* at 9.  Yet, the State has not had an opportunity to depose Mr. Yanity or any of the other witnesses that filed declarations in support of the Tribe's motions.  The State points out that it has no chance to request or review the Tribe's internal documents, or explore how the records are kept, despite the fact that the Tribe relies on the record keeper's assertions in support of its motions. The State indicates that it intends to explore the Tribe's employment and grants of authority to non-tribal members. The State has sufficiently shown that the Tribe's motion for summary judgment and motion to dismiss (Dkt. 9 and 14) should be deferred until after discovery is conducted on the limited issue of whether the Tribe waived sovereign immunity.

Further, other arguments raised in the parties' pleadings are all related, at least in part, on the question of the Tribe's immunity.  Decisions on these issues should be made together.

### III.   ORDER

Therefore, it is hereby **ORDERED** that:

- Plaintiff Stillaguamish Tribe of Indians' Motion for Summary Judgment (Dkt. 9) and Plaintiff Stillaguamish Tribe of Indians' Motion to Dismiss Defendants' Counterclaims (Dkt. 14) **ARE DENIED WITHOUT PREJUDICE**, to be renoted, if appropriate, after discovery is conducted on the issue of the Tribe's sovereign immunity; and

- The State's motion under Fed. R. Civ. P. 56(d) (Dkt. 15) **IS GRANTED**.

1 | The Clerk is directed to send uncertified copies of this Order to all counsel of record and
2 | to any party appearing pro se at said party's last known address.
3 | Dated this 19th day of September, 2016.

*Robert J. Bryan* (signature)

ROBERT J. BRYAN
United States District Judge

ORDER ORDER ON PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND MOTION TO
DISMISS AND DEFENDANTS' F.R.C.P. 56(D)
MOTION- 11