UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STILLAGUAMISH TRIBE OF INDIANS,<br><br>　　　　　　　　Plaintiff,<br>　　v.<br><br>STATE OF WASHINGTON and ROBERT W. FERGUSON,<br><br>　　　　　　　　Defendants. | CASE NO. 3:16-cv-05566-RJB<br><br>ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on cross motions for summary judgment filed by the defendants, State of Washington and Robert W. Ferguson ("the State") (Dkt. 26) and the plaintiff, Stillaguamish Tribe of Indians ("the Tribe") (Dkt. 28). The Court has considered the pleadings filed by the parties, oral argument held on August 4, 2017, and the remainder of the file herein.

The primary—and ultimately dispositive—issue before the Court is the enforceability of a sovereign immunity waiver in a contract, Salmon Project Agreement 04-1634, which was signed by Mr. Pat Stevenson, an employee and non-member of the Tribe. For the reasons

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 1

discussed below, the Court finds that summary judgment should be granted against the State and in favor of the Tribe, because the Tribe did not unequivocally waive its sovereign immunity.

## FACTS

The parties agree that the facts are largely undisputed. All facts recited are either agreed or unrefuted by the record.

**A. The Tribe, its constitution, and governing body.**

The Stillaguamish Tribe of Indians Tribe gained federal recognition in 1976. The Tribe is governed by its Constitution. Dkt. 27-2 (Decl. Latsinova, Ex. B). Under Article VII of the Tribe's constitution, a six-member Board of Directors has "power and duties" "includ[ing] but not limited" to the following:

> (b) To administer the affairs and assets of the tribe including tribal lands, funds, minerals, timber, water rights, fishing rights, and other resources under appropriate contracts, leases, permits, loans, or sale agreements.
>
> (f) To negotiate with and represent the tribe before Federal, State, tribal, and local governments and their departments and agencies, and to advise and consult with representatives of the Department of the Interior of all activities of the Department that may affect the Stillaguamish Tribe.
>
> (g) To appoint necessary committees.
>
> (h) To have and exercise such other powers and authority necessary to fulfill its obligations, responsibilities, objectives, and purposes as the governing body of the tribe, except as limited by other provisions of this Constitution. . .

*Id*. The constitution gives the Chairperson of the Board "any authority delegated to him/her by the Board of Directors." Dkt. 27-2 (Decl. Latsinova, Ex. B. Dkt. 27-2).

Mr. Shawn Yanity was Chairperson of the Board from 2004 to 2009 and 2010 to present. Dkt. 29 at 1, 2 (2nd Decl. Yanity, ¶¶1, 4). At the relevant time during 2005, Mr. Edward Goodridge, Jr. was Vice-Chairperson of the Board and the Tribe's Executive Director. Dkt. 10 at ¶5 (Decl. Yanity).

**B. Salmon Project Agreement No. 04-1634 and the Centennial Grant**

Mr. Stevenson has been the Tribe's Environmental Engineer for approximately 30 years. Mr. Stevenson is not an enrolled member of the Tribe and is therefore not eligible to be a Director. Dkt. 10 at ¶5 (Decl. Yanity). On April 6, 2005, Mr. Stevenson signed Salmon Project Agreement No. 04-1634. Dkt. 27-1 (Decl. Latsinova, Ex. B).

There is no written record, either in the form of Board meeting minutes or resolutions, that the Board considered Salmon Project Agreement No. 04-1634. Dkt. 31 (Decl. Connolly, ¶¶2, 3). Mr. Stevenson testified that he "approached the executive director of the Tribe . . . Ed Goodridge, Jr." about signing the agreement. Mr. Goodridge instructed Mr. Stevenson to sign the agreement because, per Mr. Stevenson, "it was to the point of I'm not going to be around for the next week, to go ahead and sign it." Dkt. 27-13 at 7, 8 (Decl. Latsinova, Ex. M, 88-17-89:3). The Chairperson, Mr. Yanity, was apparently also absent. *See* Dkt. 27-13 at 11 (Decl. Latsinova, Ex. M, 104:9).

Salmon Project Agreement No. 04-1634 (Dkt. 27-1, Decl. Latsinova, Ex. A) sets out contractual obligations of the Tribe and the Salmon Recovery Funding Board (SRFB), the entity responsible for administering the Salmon Funding Accounts for the State of Washington. In consideration for a state grant of $497,000, the Tribe, referred to in the agreement as the "Sponsor," was to execute a project entitled, "Steelhead Haven Landslide Remediation."

Two sections of Salmon Project Agreement No. 04-1634 are pertinent to this case. Section 5, the indemnification clause, provides:

> To the fullest extent permitted by the law, the Sponsor expressly agrees to and shall indemnify, defend and hold harmless the State . . . against all claims, actions, costs, damages, or expenses of any nature arising out of or incident to the Sponsor's or any Contractor's performance or failure to perform the Agreement.

*Id*. Section 41, which could be referred to as the waiver clause, provides:

> In the cases where this agreement is between the Funding Board and a federally recognized Indian tribe, the following Governing Law/Venue applies:
>
> > A. The State of Washington agrees that it shall initiate any lawsuit . . . in Federal Court. Interpretation shall be according to the law of the State of Washington. . . The parties agree to venue in Thurston County Superior Court [in the event that the Federal Court lacks subject matter jurisdiction].
> >
> > B. Any judicial award, determination, order, decree or other relief, whether in law or equity or otherwise, resulting from the action shall be bending and enforceable. Any money judgment against the Tribe, tribal officers and members, or the State of Washington . . . may not exceed the amount provided for in Section F—Projecting Funding of the Agreement.
> >
> > C. The Tribe hereby waives its sovereign immunity as necessary to give effect to this section, and the State of Washington has waived its immunity to suit in state court. These waivers are only for the benefit of the Tribe and State and shall not be enforceable by any third party[.]

*Id.*

Mr. Stevenson managed the Steelhead Haven Landslide Remediation project, which took several years to complete, on behalf of the Tribe. The SRFB funds were matched with a grant from the Washington Department of Ecology ("the Centennial Grant"). Dkt. 27-18 (Decl. Latsinova, Ex. R). The then-Chairman, Mr. Yanity, signed the corresponding agreement on April 18, 2005. *Id*. at 17. According to Mr. Stevenson, unlike Salmon Project Agreement 04-1634, Mr. Yanity was available to sign the Centennial Grant, "so I just had him sign it." Dkt. 27-13 at 11 (Decl. Latsinova, Ex. M, 104:9). Similar to Salmon Project Agreement No. 04-1634, the Centennial Grant has an indemnification clause, but unlike the agreement, the Centennial Grant does not have any immunity waiver clause comparable to Section 41. *Id*.

Approximately a year before signing Salmon Project Agreement 04-1634, Mr. Stevenson, as the Authorized Representative of the Tribe, submitted an Application Authorization Memorandum to the SRFB. Dkt. 27-16 at 2 (Latsinova Ex. P). The memorandum authorizes the

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 4

SRFB to "consider this application for financial assistance for the [Steelhead Haven Landslide Remediation Project]." *Id*. Under the memorandum, the Tribe "agree[s] to cooperate with the SRFB by furnishing such additional information as may be necessary to execute a SRFB Project Agreement[.]" *Id*.

**C. Board Resolutions.**

The parties have filed multiple Board resolutions as exhibits, but only three need closer examination.

1. Resolution 1998/41.

Dated July 7, 1998, Resolution 1998/41 provides in part:

> NOW THEREFORE BE IT RESOLVED:
> 1. The Stillaguamish Council hereby designates WRIA 5 as the geographic area for which a habitat restoration project list is to be developed. . .
>
> 2. Snohomish County and Stillaguamish Tribal Board of Directors are hereby designated as the lead entities to submit any such habitat restoration project lists and to seek lead entity grants that may be available to fulfill ESHB 2496 [Salmon Recovery Act] requirements.
>
> BE IT FURTHER RESOLVED, that the Stillaguamish Tribal Board of Directors hereby authorizes its Chairperson, and in her absence the Vice-Chairperson or Executive Director to negotiate and execute this resolution which shall continue until revoked by the Board of Directors.

(Decl. Latsinova, Ex. N). Resolution 1998/41 appears to have been attached to Centennial Grant or a related amendment thereof. Dkt. 27-18 at 30, 31 (Decl. Latsinova, Ex. R). No resolution was attached to Salmon Project Agreement No. 04-1634.

2. Resolution 2004/65.

Dated August 31, 2004, Resolution 2004/65 designates Mr. Stevenson and John Drotts to be the Tribe's "authorized representative to obtain federal and/or state emergency or disaster assistance funds." Dkt. 27-17 (Decl. Latsinova, Ex. Q). Further, "[t]his representative is

authorized . . . to execute all contracts, certify completion of projects, and prepare all required documentation for funding requirements." Dkt. 27-17 (Decl. Latsinova, Ex. Q).

According to Mr. Stevenson, "Resolution 2004/65 . . . has nothing to do with salmon or salmon habitat," and instead relates to damage relief from an office flood in Fall of 2003. Dkt. 34 at 2 (2nd Decl. Stevenson, ¶¶3, 4). Relatedly, a letter to the Tribe dated August 4, 2004, from State of Washington Emergency Management Division of the Military Department, requests completion of an application pursuant to the Tribe's "interest in pursuing your eligibility for reimbursement for disaster recovery costs related to the October 2003 floods." Dkt. 36-1 at 4 (Decl. Roy Smith, Ex. A). A partially completed form designates Mr. Drotts and Mr. Stevenson as agents for the Tribe with the purpose "to obtain federal and/or state emergency or disaster funds." *Id*. at 6.

3. Resolution 2010/142 and other resolutions.

Dated October 26, 2010, Resolution 2010/142 provides in part:

> NOW THEREFORE BE IT RESOLVED that the [Tribe] . . . hereby restates and affirms the long-standing Tribal-Policy that any and all limited waivers of the Tribe's sovereign immunity, whether in contracts, agreements, permits, leases, intergovernmental compacts, grants awards, or other instruments shall be granted only by the Board of Directors, shall be in writing and shall be memorialized in the official records of the Board of Directors.
> 
> . . .
> 
> BE IT FURTHER RESOLVED, that employees . . . shall have no authority to bind the Tribe through written instruments that contain limited waivers of sovereign immunity[.]

Dkt. 27-22 (Decl. Latsinova, Ex. V). According to Mr. Yanity, who signed Resolution 2010/142, "during [his] time on the Tribe's Board, it has had a practice of authorizing limited waivers of the Tribe's sovereign immunity through written Board resolutions." Dkt. 29 at 1, 2 (2nd Decl. Yanity, ¶¶1, 4).

| | |
|---|---|
| 1 | The record does not contain any Board meeting minutes prior to Resolution 2010/142 |
| 2 | that contain both the content of a sovereign immunity waiver and evidence of a Board resolution |
| 3 | or vote on the issue. On more than one occasion, however, the Board voted to adopt contracts |
| 4 | that included waivers of sovereign immunity, where entire contracts were attached to meeting |
| 5 | minutes. Dkt. 27-4 through Dkt. 27-11, Dkt. 27-14, Dkt. 27-17 (Decl. Latsinova, Ex. D-K, N, Q). |
| 6 | Since the adoption of Resolution 2010/142, the Board has on at least one occasion expressly |
| 7 | voted to waive sovereign immunity and included the content of the waiver in its meeting |
| 8 | minutes. Dkt. 27-24 (Decl. Latsinova, Ex. X). |
| 9 | LEGAL STANDARDS |
| 10 | **A. Summary Judgment.** |
| 11 | Summary judgment is proper only if the pleadings, the discovery and disclosure materials |
| 12 | on file, and any affidavits show that there is no genuine issue as to any material fact and that the |
| 13 | movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is |
| 14 | entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient |
| 15 | showing on an essential element of a claim in the case on which the nonmoving party has the |
| 16 | burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of |
| 17 | fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for |
| 18 | the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 |
| 19 | (1986)(nonmoving party must present specific, significant probative evidence, not simply "some |
| 20 | metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a |
| 21 | material fact exists if there is sufficient evidence supporting the claimed factual dispute, |
| 22 | requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,* |

*Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

**B. Waiver of Sovereign Immunity.**

As "quasi-sovereign nations," *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 71 (1978), Indian tribes are generally immune from suit. Tribal immunity is "needed to safeguard tribal self-governance" and to "promote economic development and tribal self-sufficiency." *Kiowa Tribe v. Mfg. Techs., Inc.*, 523 U.S. 751, 757-58. There are two exceptions: "where Congress has authorized the suit or the tribe has waived its immunity." *Id*. at 754. Under either exception, sovereign immunity can only be waived with requisite clarity. *C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 418 (2001). Waiver "cannot be implied but must be unequivocally expressed." *Id*. at 58.

DISCUSSION

**A. By its own terms, does Salmon Project Agreement No. 04-1634 clearly waive the Tribe's sovereign immunity?**

At oral argument the Tribe conceded that Salmon Project Agreement No. 04-1634, if binding on Tribe, is sufficiently clear to waive sovereign immunity. The Court agrees. Section 5 and Section 41 to the agreement support this conclusion. Under Section 41, the waiver clause, "[a]ny judicial award . . . shall be binding and enforceable" and that "[t]he Tribe hereby waives its sovereign immunity as necessary to give effect to this section[.]" Under Section 5, the indemnity clause, "[t]o the full extent permitted by law, the Sponsor expressly agrees to and shall indemnify, defend and hold harmless the State." The terms of the agreement are not ambiguous. Together these provisions have the requisite clarity that Salmon Project Agreement No. 04-1634, if binding on the Tribe, waives the Tribe's sovereign immunity.

**B. Did Mr. Stevenson, an employee and non-member of the Tribe, have the authority to sign Salmon Project Agreement No. 04-1634 and waive sovereign immunity on behalf of the Tribe?**

The primary question is whether Mr. Stevenson's action signing Salmon Project Agreement No. 04-1634 on behalf of the Tribe should bind the Tribe to its terms, including the waiver of sovereign immunity.

The Tribe argues that it did not bind itself to the Salmon Project Agreement No. 04-1634 because the Tribe did not, in accordance with its "policy," waive sovereign immunity in writing and by resolution or a vote of the Board. In support of the policy that the Tribe maintains was in effect in 2005, the Tribe points to the declaration of Mr. Yanity, Chairperson, who vouches for the Tribe's policy during 2005, and to Resolution 2010/142, which "reaffirms" the Tribe's prior use of that same policy during 2005.

The State argues that two Board resolutions gave Mr. Stevenson authority to sign Salmon Project Agreement No. 04-1634 and waive the Tribe's sovereign immunity: Resolution 1998/41 and 2004/65. Dkt. 26 at 17-20. Regarding Resolution 1998/41, the State points to the delegation of power, made without limitation to the Tribe's Chairperson, Vice-Chairperson, and Executive Director, to "negotiate and execute" the resolution and "to submit any . . . habitat restoration project list and to seek lead entity grants that may be available." *Id*. Regarding Resolution 2004/65, the State points to language authorizing Mr. Stevenson to "execute all contracts . . . and prepare all required documentation" in connection with emergency or disaster assistance funds, where Mr. Stevenson testified that salmon recovery had reached a state of "emergency." *Id*.

The State also argues that the Tribe should be estopped from arguing that it had a policy of waiving sovereign immunity prior to Resolution 2010/142, because the Tribe litigated the same issue in *Pilchuck II*, 2011 WL 4001088. Dkt. 26 at 14, 15. In the alternative, the State argues, the Tribe's actual practice of its self-declared waiver policy prior to Resolution 2010/142 was at best inconsistent and is of no value to determining the Tribe's pattern or practice, because the Board routinely approved contracts with waivers but did not memorialize any decision to adopt the waivers by resolution or meeting minutes. *Id*. at 16, 17.

As a starting point, the Court notes that it is undisputed that the Tribe's constitution gave the Board, as a unit, the plenary power to waive sovereign immunity. Further, the Court concurs with the State that the Tribe did not have a consistent practice or defined policy for waiving sovereign immunity in 2005. Mr. Yanity's declaration that Resolution 2010/142 "reaffirmed" the policy existing in 2005 is not supported by the record, where meeting minutes fail to show that the Board directly considered waiver of sovereign immunity. However, the conclusion that the Tribe did not have a consistent practice or policy in 2005 should not cut against the Tribe,

because there is a strong presumption against waiver of tribal sovereign immunity. *Demontiney v. United States*, 255 F.3d 801, 811 (9th Cir. 2001). The tie—or in this case the ambiguity—should favor the Tribe.

The more difficult question is whether the Resolution 1998/41 or Resolution 2004/65 should be construed as authorizing Mr. Stevenson to waive sovereign immunity on behalf of the Tribe. Regarding Resolution 1998/41, the Tribe apparently interpreted the resolution to at least generally relate to the Steelhead Haven Landslide Remediation project, because the resolution was apparently attached to the Centennial Grant, and the Centennial Grant was "synchronized with" Salmon Project Agreement 04-1634. But even if Resolution 1998/41 gave Mr. Yanity authority to bind the Tribe to the Centennial Grant, which is contrary to the Tribe's interpretation of Resolution 2010/142, Resolution 1998/41 extends authority only to three positions: Chairperson (Mr. Yanity), Vice-Chairperson (Mr. Goodridge), and Executive Director (Mr. Goodridge). Mr. Stevenson never held—and was never eligible for—any of the positions.

The State argues that "negotiate and execute this resolution" language should be interpreted to give the Chairperson authority to delegate their authority to any person of their choice. Not surprisingly, the Tribe rejects this interpretation. The State's interpretation would also swallow the explicit limitation found in the resolution itself. The interpretation would render the phrase, "in her absence the Vice-Chairperson or Executive Director," superfluous. Further, Board action elsewhere demonstrates that, at least in 2004, the Board knew how to delegate authority expressly to Mr. Stevenson. *See* Dkt. 27-17.

Furthermore, even if Mr. Yanity was authorized to enter into the Centennial Grant on behalf of the Tribe under Resolution 1998/41, and it is assumed that Mr. Goodridge could delegate the same authority to Mr. Stevenson to enter into a similar contract, Resolution 1998/41

did not delegate the Board's plenary authority to waive sovereign immunity. No terms of that resolution could be construed, even broadly, to directly authorize waiver of sovereign immunity. In the absence of any Board consideration of the issue, the resolution should be construed in favor of preserving the Tribe's sovereign immunity. Mr. Yanity's actions were not to the contrary when he signed the Centennial Grant. Assuming that he signed the Centennial Grant under Resolution 1998/41, the record does not show that Mr. Yanity attempted to waive sovereign immunity, because the Centennial Grant did not contain a waiver provision comparable to Section 41 of Salmon Project Agreement 04-1634. Resolution 1998/41 does not show an unequivocal waiver of sovereign immunity by the Tribe.

Resolution 2004/65[1] fares no better than Resolution 1998/41. Relying on resolution language authorizing Mr. Stevenson to "obtain federal and/or state emergency or disaster funds," the State leans on Mr. Stevenson's deposition testimony that salmon habitat recovery was an "emergency." The State dismisses the fact that Mr. Stevenson denies that Resolution 2004/65 has anything do with salmon habitat recovery. According to the State, the Court should focus on interpreting the plain text of the resolution, which authorized Mr. Stevenson to execute an agreement for a project to address the "emergency" of salmon habitat recovery.

Other than Mr. Stevenson's acknowledgment that salmon habitat recovery efforts addressed an "emergency," which was an answer prompted without context, nothing in the record supports the State's expansive interpretation of Resolution 2004/65. The record points to the opposite, where Mr. Stevenson states that the resolution related to Tribe efforts to secure relief funds for a flood in 2003. And, like Resolution 1998/41, even if Resolution 2004/65

---

[1] The Tribe requests sanctions against the State for arguing the applicability of Resolution 2004/65. The request is hereby denied.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 12

authorized Mr. Stevenson to enter into a contract generally, there is no evidence that the Tribe contemplated the resolution to be a blank check for a non-member employee to waive Tribe's sovereign immunity. Sovereign immunity is a different animal. Unlike other kinds of contract terms, a waiver of sovereign immunity can have severe jurisdictional consequences. With the absence of evidence to the contrary, Resolution 2004/65 was not an unequivocal waiver of sovereign immunity.

At oral argument and in its Reply, the State invited the Court to consider several other cases, mostly of persuasive, not binding, authority. Quoting from *Smith v. Hopland Band of Pomo Indian*, 115 Cal. Rptr. 2d 455, 462 (Cal.Ct. App. 2002), the State argues that because Mr. Stevenson had authority to sign Salmon Project Agreement 04-1635 generally, "it is assumed that the authority [to sign an agreement] extends to a waiver of immunity contained in the agreement." The quote is dicta, and even were it not, to reach the issue of waiver, the *Smith* court noted not only that "the person negotiating and signing the contract is authorized to do so" but also the "Tribal Council approves the contract," which is unlike this case, where the Board never considered the agreement.

The State also relies on *Findleton v. Coyote Valley Band of Pomo Indians*, 205 Cal. Rptr. 3d 699, 714 (Ct. App. 2016), which is similarly distinguished. In that case, when faced with the question of how to interpret an ambiguous constitutional provision regarding waiver, the court looked to the tribe's conduct, which included a vote by the Tribal Council. *Id*. at 715. In this case, the Board never expressly considered whether to waive its immunity, and the person who signed the contract was not authorized to sign contracts generally on behalf of the Tribe, let alone to waive its sovereign immunity.

Another case relied upon by the State is *C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411 (2001). In *C&L*, the Supreme Court held that arbitration provisions <u>within</u> a contract constituted a clear waiver of the tribe's sovereign immunity, whereas in this case, the analysis does not turn on the clarity of the contract provision itself. (The Tribe concedes the language of waiver.) For the same reason, this case is distinguishable from *Star Tickets v. Chumash Casino Resort*, where the court's waiver reasoning relied on the language of an agreement. *Star Tickets v. Chumash Casino Resort*, No. 322371, 2015 WL 6438110, at *4 (Mich. Ct. App. Oct. 22, 2015).

Perhaps the most closely analogous case cited is *Luckerman v. Narragansett Indian Tribe*, 965 F. Supp. 2d 224, 226 (D.R.I. 2013). In *Luckerman*, an attorney sent a letter of engagement to a tribe's chief that included a term arguably waiving of sovereign immunity and concluded with a request for the recipient to notify the attorney if they did not understand or agree with its terms. The tribe relied on the attorney's services and later reneged on paying the attorney's fees by invoking sovereign immunity. *Id*. The *Luckerman* court concluded that the Tribe expressly waived sovereign immunity, where the agreement had unequivocal terms and the Tribe treated the agreement as valid. *Id*. at 228. The court distinguished a long line of cases standing for the proposition that waiving sovereign immunity cannot be implied from a tribe's engagement in commercial activity. *Luckerman* is non-binding, and in the view of this Court, its reasoning is suspect. It appears the court was attempting to fit an equitable result into a sovereign immunity hole. Even so, the case is distinguishable because of who purportedly held the authority: in *Luckerman*, the chief; in this case, Mr. Stevenson, a non-member and employee of the Tribe.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 14

In summary, by its own terms Salmon Project Agreement 04/1635 clearly waives the Tribe's sovereign immunity, but the agreement is not binding on the Tribe. The agreement was not entered into with the requisite authority, because neither the Tribe's constitution, prior policies and practices, nor any resolution delegating the Board's plenary waiver power show an unequivocal waiver of sovereign immunity. Therefore, on the issue of waiving sovereign immunity, summary judgment should be granted against the State and in favor of the Tribe.

Because the Court finds that the Tribe did not waive its sovereign immunity, the Court does not reach the State's equitable arguments. "This result may seem unfair, but that is the reality of sovereign immunity[.]" *Memphis Biofuels, LLC v. Chickasaw Nation Industries, Inc.*, 585 F.3d 917, 922 (6th Cir. 2009).

The State at oral argument agreed that a finding for the Tribe on the issue sovereign immunity would effectively end the case. Therefore, by Friday, August 18, 2017, the parties should show cause, if any they have, why the case should be not be dismissed.

* * *

THEREFORE, Defendant State of Washington and Robert W. Ferguson's Motion for Summary Judgment (Dkt. 26) is HEREBY DENIED. Plaintiff Stillaguamish Tribe of Indians' Motion for Summary Judgment (Dkt. 28) is HEREBY GRANTED.

The parties shall show cause, if any they have, by Friday, August 18, 2017, why the case should not be dismissed.

It is so ordered.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 9th day of August, 2017.

*Robert J Bryan*
ROBERT J. BRYAN
United States District Judge